| | |
|---|---|
| YVONNE STRINGFIELD, Ed.D., | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 3:04-cv-0174 |
| | ) |
| MARY ELLA GRAHAM, Ed.D., ind. and | ) Judge Thomas A. Wiseman, Jr. |
| in her capacity as a Dean in the School of | ) |
| Nursing for the Tennessee State University, | ) |
| et al. | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

Before the Court is a motion for summary judgment (Doc. No. 37) filed on behalf of the sole remaining defendant in this matter, Mary Ella Graham, Ed.D.[1] The motion has been fully briefed and is ripe for consideration. For the reasons specified below, the motion for summary judgment will be granted.

## I. FACTUAL BACKGROUND

Plaintiff Yvonne Stringfield, Ed.D. was hired by Tennessee State University ("TSU") in July 1996 to serve as Director of the Baccalaureate Nursing Department, which is an administrative position ("directorship"), and as a member of the faculty ("professorship"). The terms of Dr. Stringfield's employment were memorialized in a "Notice of Appointment and Agreement of Employment," which was signed by TSU's president, Dr. James Hefner, on July 9, 1996 and by Dr. Stringfield on July 11, 1996. (Doc. No. 1 (Complaint), Ex. 1 ("Agreement of Employment" or "Agreement").) The Agreement states that Plaintiff's employment was for "appointment to a position approved by the Tennessee Board of Regents as Director in the Baccalaureate Nursing Program." (*Id.*) A provision in the contract provided that the appointment was made subject to the laws of Tennessee and the requirements and policies of both TSU and the Tennessee Board of Regents (the "TBR"). Another provision stated that following an initial six month probationary period, the "agreement" could only be terminated upon thirty-days notice. The

---

[1] Although none of the parties bother to make this distinction, it appears that the only claims remaining in this case are those against Dr. Graham in her official and individual capacities. As set forth in Section II below, the district court originally granted a motion to dismiss all claims asserted against all defendants. The plaintiff appealed and the Sixth Circuit reversed only the dismissal of the claims against Graham, and not those against the other defendants, Tennessee State University ("TSU") and Tennessee Board of Regents ("TBR").

Agreement further provided as a "special condition" that a three-year probationary credit towards a tenure-track appointment would govern the contract. (*Id.*)

Dr. Stringfield contends that this language gave her a tenure-track position in both the professorship and the directorship. In support of this argument, she points to a letter in her personnel file from Vice-Chancellor Nebraska Mays to Dr. Hefner dated June 26, 1996, which included the following language: "I am writing to approve the tenure-track appointment for three years probationary credit of Dr. Yvonne M. Stringfield as director and associate professor of the baccalaureate program in the school of Nursing at Tennessee State University." (Doc. No. 44-9, at 10.)

Three years after her initial appointment, in June 1999, Dr. Stringfield's tenure as a faculty member was approved by the TBR. (Doc. No. 40-2, at 23–24.) The letter sent to the Plaintiff to confirm her tenure is not in the record, but the minutes from the TBR meeting and attachment thereto reflect that she was a "faculty" member recommended for tenure and that her "Academic Rank" for the 1998–99 academic year was that of "Associate Professor" in the Department of Nursing. (Doc. No. 40-2, at 23–24.) The minutes do not reflect any reference to her directorship.

In March 2002, Dr. Mary Ella Graham was selected to serve as dean of the School of Nursing at TSU. As dean of the program, Dr. Graham became Dr. Stringfield's supervisor. Dr. Stringfield scored well on two initial evaluations conducted by Dr. Graham, but both evaluations noted that Dr. Stringfield needed improvement in holding faculty accountable for tasks and in grant writing. (Doc. No. 44-9.) The evaluations also noted that Stringfield needed to work on student NCLEX test scores, improving facilities and revising the baccalaureate nursing program. (*Id.*)

In September 2003, Dr. Graham became dissatisfied with Dr. Stringfield's performance and called her to her office to discuss performance problems and to inform her that she would be relieved of her administrative position. Dr. Graham had already prepared a letter to Dr. Stringfield giving her formal notice of such removal, but Dr. Stringfield became upset and left the meeting abruptly, before Dr. Graham had the opportunity to give her the letter or to go over its contents. Dr. Graham subsequently had the letter of removal hand-delivered to the Plaintiff, detailing the reasons why she was being released from her duties as a program director, but specifying that Dr. Stringfield was expected to continue in her role as a tenured faculty member, teaching classes and engaging in "[a]dditional activities consistent with the

faculty role." (Doc. No. 1, Ex. 3 (9/23/2003 Letter to Stringfield); Doc. No. 44-7, at 3–4.) According to the September 23 letter, Dr. Graham's decision to remove Dr. Stringfield from her directorship was based upon her perception that Stringfield could not provide the degree of leadership needed to manage the baccalaureate nursing program. (Doc. No. 1, Ex. 3.) Specifically, according to Dr. Graham, Dr. Stringfield was not scheduling faculty meetings, addressing low student scores on the NCLEX test, or making satisfactory strides toward reforming the baccalaureate program's curriculum. (*Id.*) Dr. Stringfield denies these allegations.

Over two months later, Dr. Stringfield responded to Dr. Graham's criticisms with a nine page letter (Doc. No. 1, Ex. 5), but she did not appeal Dr. Graham's decision or file a grievance. (Doc. No. 40-3, at 12.) Instead, Dr. Stringfield began looking for other employment and resigned from TSU in July 2004. She accepted a job at Delaware State University, where she became the Chair of the Nursing Program in July 2006. (Doc. No. 40-3, at 13.)

## II. PROCEDURAL HISTORY

The plaintiff filed her complaint on March 3, 2004 against TSU, TBR and Dr. Graham in her official and personal capacities, alleging two causes of action under 42 U.S.C. § 1983. For her first cause of action, Dr. Stringfield claimed that her due-process rights were violated when she was removed from her position as director of the baccalaureate nursing program, on the basis that she had a tenured position and thus a property interest in that position. She also alleged that pursuant to her Agreement of Employment and the TSU Personnel Handbook, she was entitled to thirty days notice before being terminated from an administrative position, which she did not receive, nor was the decision to terminate or demote her discussed with the Human Resources Office. For her second cause of action, Stringfield asserted that she was deprived of a liberty interest in "preserving her good name, reputation, honor and integrity." (Doc. No. 1, at ¶ 6.) Specifically, Dr. Stringfield alleged that Dr. Graham's charges in the September 23, 2003 letter called her reputation into question "in a constitutional sense" and that the Defendants had foreclosed other employment opportunities for her by maintaining false information in her personnel file that would likely be given to other prospective employers. Dr. Stringfield sought, *inter alia*, reinstatement, back pay for the director's position, front pay if she is not reinstated, punitive damages, and injunctive relief in the form of purging of her employment file of false information.

On April 26, 2004, the defendants filed a motion to dismiss under FRCP 12(b)(1) and 12(b)(6). This Court granted the motion to dismiss in its entirety on the basis of sovereign and qualified immunity. Stringfield appealed only the dismissal of her claims against Graham in her individual and official capacities. The Sixth Circuit affirmed this Court's dismissal of the plaintiff's liberty-interest claim but reversed the dismissal of the property-interest claim against Graham in her personal and representative capacity on two grounds. First, the Sixth Circuit held that § 1983 claims for injunctive relief against state officials in their official capacity are not barred by sovereign immunity. Second, it held that it could not conclude, under the relatively lenient 12(b)(6) standard, that Stringfield could prove no set of facts in support of her claims that she had a property interest in the directorship and that it would have been clear to a reasonable person that terminating her from that position (or demoting her) was unlawful, such that dismissal of the claims against Graham in her individual capacity on qualified immunity grounds was not warranted. In reaching that conclusion, the Sixth Circuit also noted that the factual record had not yet been developed regarding such things as whether the ambiguously worded 1996 "Notice of Appointment and Agreement of Employment" from TSU meant to give Stringfield a tenure-track appointment in her directorship, her faculty position, or both; what other arrangements, verbal or written, were made; the applicability and scope of the provisions in the Handbook; and what the relevant Tennessee and TSU policies might indicate.

After remand, the parties conducted discovery on the questions enumerated by the Sixth Circuit, among other matters. Graham has now filed her motion for summary judgment, based solely on the argument that Stringfield did not have a property interest in the directorship that would warrant due-process protections.

## III.     LEGAL STANDARD

Summary judgment is proper where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Jones v. Potter*, 488 F.3d 397, 402 (6th Cir. 2007). Either party may be entitled to summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, make the necessary showing." *Id.* (*citing* Fed. R. Civ. P. 56(c)). In considering a motion for summary judgment, a court construes the evidence and draws all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986). If "a reasonable jury could return a verdict for the nonmoving party," summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is insufficient, however, simply to show "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "[T]he mere existence of a scintilla of evidence in support of Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

**IV.     DISCUSSION**

Dr. Stringfield essentially claims that her Fourteenth Amendment's due-process rights were violated when Dr. Graham removed her from the directorship position without cause or notice and an opportunity for a hearing. The primary basis for her claims is that she possessed a property interest in her directorship at TSU because she was tenured in that position, and that she could not be deprived of that property interest without due process. Alternatively, Stringfield argues that she held a property interest in her role as a director "by virtue of" her role as a tenured professor and therefore was entitled to the same process afforded professors who are terminated from tenured professorships. In addition, Stringfield argues that her employment contract and the University's Personnel Handbook provide an independent basis for the Court to conclude that she had a property interest in her administrative position. Each of these arguments is addressed below.

**A.     Plaintiff Did Not Have Tenure in the Directorship**

***(1)     The Employment Agreement Did Not Grant Tenure in Any Position***

The Fourteenth Amendment prohibits states from depriving "any person of life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1. The Fourteenth Amendment's protection of property acts as a safeguard for interests that a person has already acquired in specific benefits. *Bd. of Regents v. Roth*, 408 U.S. 564, 571 (1972) (holding that a professor did not possess a property interest in his teaching position where it was subject to a limited-term appointment such that no legitimate claim to re-employment existed). In determining whether a due-process violation has occurred, a court first looks to whether the plaintiff held a property right that was entitled to procedural protections; only if a property interest is established does a court determine the appropriate protections due. *Ferencz v. Hairston*, 119 F.3d 1244, 1247 (6th Cir. 1997) (citing *Roth*, 408 U.S. at 570–71). In *Roth*, the Court recognized that an

individual may have a property interest in public employment, but that to be entitled to a property interest there must be a legitimate claim of entitlement to a specific benefit, and not merely an abstract need, desire or unilateral expectation. *Roth*, 408 U.S. at 573, 577.  A court looks to the nature of the interest at stake and not to its weight to determine whether due-process protection applies. *Id.*  Protected interests are created and defined by existing rules or understandings that stem from an independent source such as state law rather than by the Constitution, meaning that "the determination of the existence of a property right protected by due process is controlled by the statute creating and defining that right." *Hamby*, 368 F.3d at 558 (citing *Roth* 408 U.S. at 577; *Goldberg v. Kelly*, 397 U.S. 254 (1970)).

Here, Dr. Stringfield contends that the she had a property interest in the directorship because she had tenure in that position.  In support of this argument she asserts that the Agreement of Employment "clearly" states that she was tenured without differentiating between the directorship and professorship positions, and that she therefore was tenured in both positions.  (Doc. No. 41, at 5, 7.)  She maintains that the June 1996 letter from Nebraska May supports her assertion.

Dr. Stringfield's position is unavailing.  The Agreement of Employment is poorly worded but it is not ambiguous with respect to the granting of tenure:  In and of itself, the Agreement did not grant tenure to Dr. Stringfield at all, in any capacity.  Instead, it confirmed her appointment to the position of "Director in the Baccalaureate Nursing Department" and as a "special condition" indicated that Dr. Stringfield also was offered a "Tenure track Appointment with three (3) year probationary credit."  (Doc. No. 1, Ex. 1, at ¶ 6.)  Rather than granting or even guaranteeing tenure, this provision simply gave Dr. Stringfield three years of credit toward tenure, thereby making her eligible for consideration of tenure by the TBR after only three years as opposed to six.  Dr. Stringfield herself concedes that she was not actually granted tenure, in any position, until 1999. (Doc. No. 40-3, at 12).  It is therefore abundantly clear that the Agreement of Employment did not create a property interest in any position held by Dr. Stringfield.

### *(2)      Plaintiff Was Awarded Tenure in her Faculty Position*

The evidence in the record demonstrates that when Dr. Stringfield was actually granted tenure in 1999, it was solely in her role as a faculty member and not in her administrative position, regardless of whether her Agreement of Employment contained some ambiguity as to whether she was eligible for tenure in the directorship.  (*See* Doc. No. 40-2, at 23–24 (indicating she was among the "faculty

members" recommended for tenure as of the 1999-2000 academic year and that her "Academic Rank" for the 1998–99 academic year was that of "Associate Professor" in the Department of Nursing.)  The letter sent to Dr. Stringfield notifying her that she had been awarded tenure has not been produced, but Dr. Stringfield concedes that she does not recall ever being told that she was awarded tenure in her administrative position.  She simply unilaterally assumed she was awarded tenure in both positions.

Under *Roth*, a property interest in university employment is created and defined by the terms of the tenure appointment.  408 U.S. at 578.  Here, the Agreement of Employment expressly incorporated the governing laws of the State of Tennessee and the policies of both TSU and the TBR, all of which prohibit tenure in administrative positions or the awarding of tenure by any entity other than the TBR.

Specifically, Tennessee statute provides that "tenure shall only be acquired by a faculty member in an institution upon positive approval by the [TBR] and no other type of tenure or right similar thereto shall be acquired by a faculty member." Tenn. Code Ann. § 49-8-301(c)(1).  In addition to restricting tenure to faculty members, this statute also prevents tenure from being granted by university presidents, deans or other university administrators.  Further, pursuant to authority conveyed by the State, the TBR's written policies unambiguously prohibit tenure from being granted in administrative positions:

> No faculty member shall be eligible for tenure in a non-faculty position; provided that where a faculty member with tenure is appointed to an administrative position, he/she will retain tenure in the former faculty position only; *and provided further that a member otherwise eligible for tenure who also holds a non-faculty position may be awarded tenure in the faculty position only*, subject to the requirements of this policy.

(Doc. 40-3, at 16 (TBR Policy No. 5:02:03:00 III(C)(4) (emphasis added)).)

Because the authority to grant tenure is limited to the TBR and the TBR is limited to granting tenure in faculty positions, Dr. Stringfield could not have been granted tenure in her administrative position.  Any expectation or perception held by Dr. Stringfield that she was granted tenure in her administrative position was based purely on subjective belief and unilateral expectation, and not on information from or representations made by the TSU or the TBR.

Dr. Stringfield therefore cannot establish that the terms of her Agreement of Employment or the actual award of tenure in her faculty position gave rise to protected state benefit or a property interest in her administrative position.

### (3) Plaintiff Did Not Have a Property Interest in her Administrative Position "by Virtue of" her Tenured Faculty Position

Dr. Stringfield next argues that, even if her Agreement of Employment did not grant her tenure in her directorship role, "she held a property interest in that position by virtue of her role as a tenured faculty member." (Doc. No. 41, at 12.) For that reason, she claims that she was entitled to the same process afforded to tenured faculty when she was removed from her administrative position and cites in support of this argument the case of *Davis v. Barr*, 373 F. Supp. 740, 746 (E.D. Tenn. 1973).

In *Davis*, a tenured high school teacher sought damages and equitable relief on ground that he was demoted from his coaching position without being afforded procedural due process. The district court in that case held that under Tennessee law the plaintiff had a legitimate claim of entitlement to continued employment as both a teacher and a coach and was denied due process when he was removed summarily from his position as coach and his salary reduced concomitantly. In reaching that conclusion, the district court first observed that "[b]efore the procedural safeguards of the Due Process Clause may be invoked, plaintiff must demonstrate that the alleged actions of the defendants deprived him of an interest encompassed by the Fourteenth Amendment's protection of property." *Id.* at 743. The threshold inquiry was thus whether the plaintiff had a property interest in his coaching position. *Id.* at 744.

The defendants had stipulated that the plaintiff was tenured as a teacher under state law and would clearly have been entitled to notice and a hearing as a matter of state law, irrespective of the Constitutional issue, if he had been terminated or removed as a teacher. The defendants argued, however, that the protections afforded by state law extended only to the plaintiff's position as a teacher and did not proscribe the hiring and firing of the plaintiff as a coach. Plaintiff, on the other hand, argued that the vacancy he had been hired to fill was that of teacher *and* coach, and the two jobs were inseparable. The court noted that to decide the issue before it, it was required to ascertain the plaintiff's status under state law, "not for the purpose of deciding whether state law was violated . . . , but to determine the limited issue of whether plaintiff enjoyed the legitimate claim of entitlement to continued employment without perfunctory discharge or demotion." *Id.*

After conducting a review of Tennessee case law construing the tenure statutes that applied to public secondary-school teachers, the court determined that plaintiff's appointment to a tenured position as a teacher encompassed his role as a coach and that his removal from the coaching position effectively

reduced his responsibilities as a teacher and reduced his salary, without a hearing or any other process. The court determined that this demotion violated the plaintiff's due-process rights because, under the applicable law, a teacher with tenure had a right "to notice of a hearing before the Board [of Education] before he can be transferred to a position with less responsibility and where he will be required to serve at a reduced salary." *Id.* at 745 (citations omitted).

The holding was based upon case law and statutes applicable to secondary-school teachers, however, making the case distinguishable on the facts from the case at bar. Here, Dr. Stringfield has not shown that her duties as a director were incidental to or part of her responsibilities as a tenured professor. The two positions were separate and distinct, and the statutes and policies outlined above applying to tenure in university faculty positions clearly prohibit extending tenure to administrative positions held by otherwise tenured faculty members.

In sum, nothing in Tennessee state law or TBR policy suggests that Dr. Stringfield had a property interest in her administrative role "by virtue of" her property interest in her tenured faculty position.

**B.** ***The Employment Contract and Personnel Handbook Did Not Create Property Rights Subject to Due-Process Protections***

Apart from her arguments regarding tenure, Dr. Stringfield claims that the Agreement of Employment and the TSU personnel handbook created a property interest in continued employment as director of baccalaureate nursing and that this property interest was violated when she was removed from the directorship without notice and a hearing.

The two provisions in the personnel handbook to which Stringfield points, however, provide that (1) suspension or dismissal must be discussed with Human Resources and (2) thirty-days notice must be provided prior to termination. Likewise, the Agreement of Employment provides for thirty days notice prior to termination of the Agreement. Dr. Stringfield, however, was not suspended, dismissed, or terminated—she remained an employee of TSU. She was removed from the directorship while continuing to be employed as a professor. It is therefore unclear how a either of the handbook or Agreement provisions would be relevant to Dr. Stringfield's circumstances.

**C.** **Dr. Stringfield Was Not Entitled to Notice and a Hearing**

Finally, Dr. Stringfield asserts broadly that as a public employee she had a "clearly established" right to notice and a hearing before being terminated or demoted. (Doc. No. 41, at 14–15.) The cases to

which she cites, however, do not support her position, as the employees referenced in those cases were classified under applicable state law as tenured civil servants who, again pursuant to state law, could not be terminated without cause. Their rights under state law created a property interest in their positions— which also afforded them constitutional rights to notice and a hearing before being dismissed or demoted. *See*, *e.g.*, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985); *Ciambrello v. County of Nassau*, 292 F.3d 307 (2d Cir. 2002). In *Gregory v. Hunt*, 24 F.3d 781, 785 (6th Cir. 1994), the Sixth Circuit reiterated the principle that "[a]n at-will public employee does not have a property interest in continued employment unless it can be shown that the employee had a reasonable expectation that termination would be only for good cause." Dr. Stringfield was not actually terminated, since she retained her job as a tenured professor at TSU. More importantly, she has not pointed to any provision in the Agreement of Employment, the personnel handbook, or any state law or policy suggesting she could be removed from her administrative position only for cause. In short, because Dr. Stringfield did not have a property interest in her administrative role, she was not entitled to notice and a hearing before being removed from that role, and therefore cannot prove that she was deprived of any constitutionally protected rights.

## V. CONCLUSION

Dr. Graham has demonstrated, based on the undisputed material facts in this case, that Dr. Stringfield does not have an underlying property interest on which to rest her constitutional claims. The motion for summary judgment will therefore be granted.

An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge